PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

THOMAS MICHAEL FRANCIS;
DANIELLE FRANCIS,

*Plaintiffs-Appellants,*

v.

ALLSTATE INSURANCE COMPANY,

*Defendant-Appellee.*

No. 12-1563

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William D. Quarles, Jr., District Judge.
(1:11-cv-01030-WDQ)

Argued: January 30, 2013

Decided: March 7, 2013

Before DAVIS, DIAZ, and THACKER, Circuit Judges.

Affirmed by published opinion. Judge Davis wrote the opinion, in which Judge Diaz and Judge Thacker joined.

## COUNSEL

**ARGUED:** Edward J. Brown, LAW OFFICE OF EDWARD J. BROWN, LLC, Ellicott City, Maryland, for Appellants. Ronald Weldon Cox, Jr., MCCARTHY WILSON, LLP, Rockville, Maryland, for Appellee. **ON BRIEF:** Thomas Pat-

rick Ryan, MCCARTHY WILSON, LLP, Rockville, Maryland, for Appellee.

---

**OPINION**

DAVIS, Circuit Judge:

Appellants Thomas and Danielle Francis ("the Francises" or "Appellants") appeal an order of the district court granting summary judgment to Appellee Allstate Insurance Company ("Allstate"). In March 2011, Appellants brought this action in Maryland state court seeking a declaration as to Allstate's duty under a renters insurance policy to defend and indemnify the Francises in a tort suit brought against them, and others, in the Circuit Court for Frederick County, Maryland. Meanwhile, in the tort suit, the state court entered a final judgment in favor of all defendants (including the Francises) on April 6, 2011. Thereafter, Allstate filed a Notice of Removal, and this action was removed to the United States District Court for the District of Maryland on the basis of diversity jurisdiction.

After the district court denied Appellants' first motion to remand, Allstate filed a motion for summary judgment, contending that the Francises' renters insurance policy, issued in California, did not provide coverage for the claims asserted in the underlying tort action. In response, Appellants moved a second time to remand, now on the ground that (as they sought only the costs of their defense of the tort suit, rather than any potential indemnity) the amount in controversy did not exceed the $75,000 jurisdictional threshold, and thus the district court lacked subject matter jurisdiction. Appellants also opposed Allstate's motion for summary judgment on the merits.

On April 18, 2012, the district court denied the second motion to remand and granted Allstate's motion for summary

judgment, concluding that Allstate did not have a duty to defend. *Francis v. Allstate Ins. Co.*, 869 F. Supp. 2d 663 (D. Md. 2012). Appellants filed a timely notice of appeal. For the reasons that follow, we affirm.

I.

A.

In March 2008, Danielle Francis, a California resident, and her minor son Thomas were sued by Troy Towers in the Circuit Court for Frederick County, Maryland ("the Underlying Action"). Towers worked as a Resident Aide at the Maryland School for the Deaf ("MSD"), which Thomas Francis attended.[1] The complaint in the Underlying Action asserted claims of defamation, invasion of privacy-false light, malicious prosecution, civil conspiracy and intentional infliction of emotional distress. The complaint alleged that Thomas Francis, with the assistance of his parents, "made false statements about [Towers], claiming he had sexually abused . . . and assaulted [ ] Thomas Francis and other students at MSD." J.A. 38. It further averred that the Francises knowingly made the false and defamatory statements about Towers, or in the alternative, that they negligently made them. Criminal charges had been filed against Towers based in part on the alleged statements but were later dismissed; Towers alleged that the statements injured his reputation in the community and at MSD, that as a result of the statements he suffered mental anguish and humiliation, and that he had been temporarily suspended without pay from his employment.

Appellants did not and do not deny making the alleged statements, but contend that Ms. Francis made them for the sole purpose of protecting her son and "without intent to slan-

---

[1]We were advised at oral argument that at the time the Underlying Action was filed, Thomas Francis was a minor; he has now attained his majority.

der Mr. Towers [ ]or invade his privacy." Appellants' Br. 3. Additionally, they argue that Thomas Francis made the statements to school officials, and later to police, "solely for [his own] protection and not to defame or otherwise harm Mr. Towers." *Id.* at 4.

At the time of the allegedly defamatory statements, the Francises were insured under a California Renters Policy ("the Policy") issued by Allstate. The Policy covered Danielle Francis's residence in Santa Clara, California, and was mailed to her at that residence. The Policy provided, in relevant part:

> Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.
>
> [Allstate] may investigate or settle any claim or suit for covered damages against an insured person. If an insured person is sued for these damages, [Allstate] will provide a defense with counsel of [its] choice, even if the allegations are groundless, false or fraudulent. [Allstate] [is] not obligated to pay any claim or judgment after [it] [has] exhausted [its] limit of liability.

J.A. 77, Policy at p. 14.

The Policy defines "occurrence" as:

> [A]n accident, including continuous or repeated exposure to substantially the same general harmful conditions, during the policy period, resulting in bodily injury or property damage.

J.A. 66, Policy at p. 3.

"Bodily Injury" is defined as "physical harm to the body, including sickness or disease, and resulting death . . . ." J.A. 65, Policy at p. 2. "Property Damage" is defined as "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction." J.A. 66, Policy at p. 3.

The Policy also contains a choice-of-law provision which states:

> This policy is issued in accordance with the laws of California and covers property or risks principally located in California. Subject to the following paragraph, the laws of California shall govern any and all claims or disputes in any way related to this policy.

> If a covered loss to property, or any other occurrence for which coverage applies under this policy happens outside California, claims or disputes regarding that covered loss to property, or any other covered occurrence may be governed by the laws of the jurisdiction in which that covered loss to property, or other covered occurrence happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

J.A. 89, Policy Endorsement, California Renters Amendatory Endorsement.

The Francises initiated this action in the Circuit Court for Frederick County, Maryland, contending that Allstate had a duty to defend them, under the Policy, against Towers's suit. The Complaint for Declaratory Judgment asserted that, in addition to Towers's false-light contentions, Towers "sustained bodily injury as a result of the [Francises'] alleged acts —*e.g.* impotency." J.A. 9. At the time the declaratory judgment action was filed, the Francises (by their privately retained counsel) had already filed a motion for summary

judgment in the Underlying Action. That motion was granted on March 16, 2011, and final judgment in favor of all defendants was entered April 6, 2011. At the conclusion of the Underlying Action, the Francises had expended $66,347 in attorney's fees and costs for their defense.

On April 20, 2011, Allstate timely removed the declaratory judgment action to the United States District Court for the District of Maryland on the basis of diversity jurisdiction. The Francises filed a timely motion to remand the case to state court on May 19, 2011, contending that the removal was untimely because the thirty-day time limit for removal had expired. The district court found the removal timely and denied the motion to remand.

Allstate filed a motion for summary judgment in the declaratory judgment action on October 28, 2011, asserting that it had no duty to defend the Francises because, under California law, the statements made about Towers did not constitute an "accident," and therefore claims arising from them were not covered by the Policy.[2] The Francises filed a second motion to remand the case, which challenged the district court's subject matter jurisdiction on the basis that the $75,000 amount-in-controversy threshold had not been met, and they also substantively challenged Allstate's denial of coverage of the Underlying Action.

On April 17, 2012, the district court denied the Francises' second motion for remand and granted Allstate's motion for summary judgment. This timely appeal followed.

---

[2]As previously mentioned, at the time of removal and thereafter, the Underlying Action had been resolved in favor of the Francises. Thus, as the parties agree, Allstate's duty to indemnify the Francises was not at issue.

## II.

This Court reviews the denial of a motion to remand to state court de novo. *Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005). Likewise, we review a district court's grant of summary judgment de novo, applying the same standard used by the district court. *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 149 (4th Cir. 2012). The Court "view[s] all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *T-Mobile Ne., LLC v. City Council of City of Newport News, Va.*, 674 F.3d 380, 385 (4th Cir. 2012) (internal quotations and citations omitted). Under Federal Rule of Civil Procedure 56(a), summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party is 'entitled to judgment as a matter of law' when the nonmoving party fails to make an adequate showing on an essential element for which it has the burden of proof at trial." *Maracich v. Spears*, 675 F.3d 281, 291 (4th Cir. 2012), *cert. granted*, 133 S. Ct. 98 (2012).

## III.

Appellants first contend the district court erred in rejecting their jurisdictional challenge because the amount-in-controversy requirement was not met. The removal of a civil case from state to federal court is governed by 28 U.S.C. § 1446. That statute provides:

> (a) Generally. — A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, plead-

ings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a).

The removability of a case "depends upon the state of the pleadings and the record at the time of the application for removal . . . ." *Alabama Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 216 (1906); *Pullman Co. v. Jenkins*, 305 U.S. 534, 538 (1939). If diversity of citizenship, under 28 U.S.C. § 1332(a), provides the grounds for removal, then "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy . . . ." 28 U.S.C. § 1446(c)(2). If a complaint "does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds [$75,000]." *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993). "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 181 (1936) (noting the "principle that jurisdiction is to be tested by the value of the object or right to be protected against interference").

Here, when Allstate filed its Notice of Removal, according to the state court complaint, the object of the litigation was the Francises' request that Allstate defend and/or indemnify them in the Underlying Action for defamation and related torts. Despite the fact that by the time Allstate removed the case to federal court, indemnity was no longer at issue, the relief requested in the declaratory judgment complaint specifically included the costs and expenses to be incurred in the declaratory judgment action as well as defense costs in the Underlying Action. Nevertheless, Appellants now contend that the only amount that ought to be considered in ascertaining whether the amount in controversy exceeds $75,000 is the

total of the attorney's fees incurred in defending against the Underlying Action. They contend that the costs of pursuing this declaratory judgment action are "not a part of the amount of controversy calculation as they are not recoverable by statute or contract provision," and "even if they were, a fact finding hearing would need to be conducted, to determine if the costs would exceed the $6,000 gap [between the defense costs for the Underlying Action and the $75,000 threshold]." Appellants' Br. 25, n.3. In other words, Appellants argue (with insight flowing from 20-20 hindsight) that the sole object of this litigation was the $66,347 expended by the Francises to defend against the Underlying Action. Allstate asserts, to the contrary, that the value of the attorney's fees likely to be incurred throughout the declaratory judgment action should also be included in the amount-in-controversy calculation.

Generally, attorney's fees are not included in the amount-in-controversy calculation, but courts have created two exceptions to this rule: "(1) if the fees are provided for by contract; or (2) if a statute mandates or allows payment of attorney's fees." *15-102 Moore's Federal Practice*, Civil § 102.106(6)(a).

Appellants brought their declaratory judgment action under the Maryland Uniform Declaratory Judgment Act.[3] With regard to the availability of attorney's fees in a declaratory judgment action, the Maryland Court of Appeals has held

> [A]n insurer is liable for the damages, including attorneys' fees, incurred by an insured as a result of the insurer's breach of its contractual obligation to

[3]The Maryland Uniform Declaratory Judgment Act provides:

Except for the District Court, a court of record within its jurisdiction may declare rights, status, and other legal relations whether or not further relief is or could be claimed . . . .

Md. Code Ann., Cts. & Jud. Proc. §3-403.

> defend the insured against a claim potentially within the policy's coverage, and this is so whether the attorneys' fees are incurred in defending against the underlying damage claim or in a declaratory judgment action to determine coverage and a duty to defend.

*Bankers & Ship. Ins. v. Electro Enter.*, 415 A.2d 278, 282 (Md. 1980). Additionally, under the Maryland Declaratory Judgment Act, "further relief based on a declaratory judgment or decree may be granted if necessary or proper." Md. Code Ann., Cts. & Jud. Proc. §3-412.

The district court reviewed the above authorities bearing on the Maryland courts' position on attorney's fees in declaratory judgment suits and concluded that "[w]hen Maryland law permits recovery of attorneys' fees, '[p]otential attorneys' fees should be considered in determining whether the amount in controversy in a diversity action exceeds the jurisdictional threshold.'" *Francis*, 869 F. Supp. 2d at 669 (citing *Gilman v. Wheat, First Sec., Inc.*, 896 F. Supp. 507, 511 (D. Md. 1995) (finding that a claim for relief under the Maryland Securities Act authorizes recovery of attorney's fees in certain situations, and concluding that potential attorney's fees should be considered in the amount-in-controversy determination)). After considering the $66,347 expended in the Underlying Action, the district court concluded that "[e]xperience and common sense suggest that the Plaintiffs' attorneys' fees in [the declaratory judgment] case will exceed $8,653 — the difference between $75,000 and the $66,347 the Plaintiffs spent in Towers's lawsuit." *Francis*, 869 F. Supp. 2d at 670. We agree.

We also agree with the district court that, as Maryland case law allows for the recovery of attorney's fees in declaratory judgment actions, the attorney's fees in the Francises' action are properly considered in the amount-in-controversy calculation here. As the complaint in this action did not seek a spe-

cific amount in damages, Allstate need only "prove by a preponderance of the evidence that the amount in controversy exceeds the [jurisdictional minimum]." *De Aguilar*, 11 F.3d at 58.

As the district court noted, "[t]his action involves federal jurisdiction, contract interpretation, and choice of law issues that were not addressed in the underlying tort action." *Francis*, 869 F. Supp. 2d at 670. The complexity of the case is sufficient to establish that it is more likely than not that the attorney's fees likely to be incurred by Appellants in this declaratory judgment action, when coupled with the amount they expended to defend the tort action, will exceed the jurisdictional threshold. Thus, the district court did not err in its rejection of the Appellants' jurisdictional challenge.[4]

## IV.

Appellants' challenge to the merits of the district court's coverage determination rests primarily on their contention that Maryland law, rather than California law, applies to the issue of contract interpretation.[5] We reject that contention and affirm the district court's application of California law for the reasons set forth within.

## A.

A federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938). Maryland courts have "long recognized the ability of contracting parties to specify in their contract that the laws of

---

[4]Tellingly, Appellants had not raised the amount-in-controversy issue in their initial motion to remand.

[5]There is no dispute between the parties that, as to issues of tort liability possibly relevant to the Underlying Action, Maryland law would apply.

a particular State will apply in any dispute over the validity, construction, or enforceability of the contract." *Jackson v. Pasadena Receivables, Inc.*, 921 A.2d 799, 803 (Md. 2007). Such choice-of-law provisions "trump the conflict of law rules that otherwise would be applied by the court." *Id.*

The Policy's choice-of-law provision called for the application of California law, unless a covered occurrence took place outside of California, in which case

> claims or disputes regarding that covered loss to property, or any other covered occurrence may be governed by the laws of the jurisdiction in which that covered loss to property, or other covered occurrence happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

J.A. 89, Policy Endorsement, California Renters Amendatory Endorsement. Thus, Maryland law applies to the issue of whether Allstate had a duty to defend the Francises if Maryland law would apply without the choice-of-law provision in the Policy.

### B.

Maryland courts follow the doctrine of *lex loci contractus* when interpreting insurance contracts and determining which state's law governs.[6] *Allstate Ins. Co. v. Hart*, 611 A.2d 100,

---

[6]Appellants contend that the district court erred in finding that the Maryland doctrine of *lex loci contractus* required the application of California law. They assert that the doctrine of *renvoi* should have been applied.

The doctrine of *renvoi* provides that "when the forum court's choice-of-law rules would apply the substantive law of a foreign jurisdiction to the case before the forum court, the forum court may apply the whole body of the foreign jurisdiction's substantive law including the foreign jurisdic-

101 (Md. 1992). The doctrine requires courts to apply the law of the jurisdiction where the contract was made to determine questions of its validity and construction. *Id.* Where the con-

---

tion's choice-of-law rules." *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 659 A.2d 1295, 1302 (Md. 1995).

Under a "limited *renvoi* exception," Maryland courts "avoid the irony of applying the law of a foreign jurisdiction when that jurisdiction's conflict of law rules would apply Maryland law." *Id.* at 1304. In such a situation, Maryland courts apply Maryland substantive law to agreements entered in foreign jurisdictions, notwithstanding the *lex loci contractus* doctrine, when

> (1) Maryland has the most significant relationship, or, at least, a substantial relationship with respect to the contract issue presented; and

> (2) The state where the contract was entered into would not apply its own substantive law, but instead would apply Maryland substantive law to the issue before the court.

*Id.*

Applying this two-part test to the facts here demonstrates the inappropriateness of invoking *renvoi*. First, although the events that led to the filing of the Underlying Action took place in Maryland, the contract issue presented is whether Allstate had a duty to defend the Francises based on the terms of a contract that was made in California. Not only does Maryland not have the most significant relationship to the issue of whether Allstate has a duty to defend under a California contract, it has virtually no relationship to it other than the fact that the event that triggered the attempt to enforce the duty happened to take place in Maryland. Accordingly, application of the first prong does not weigh in favor of *renvoi*.

As for the second prong, Appellants provide no support for the proposition that, in the face of a choice-of-law provision in the Policy that dictated California law to govern any disputes arising under the agreement, California would not apply its own substantive law but would instead apply Maryland substantive law.

As neither of the two prongs of the test for application of the limited doctrine of *renvoi* is met here, the controlling doctrine is *lex loci contractus*. Thus, the district court correctly determined that California law governs the issue of contract interpretation in this case, i.e., whether Allstate owed the Francises a duty to defend under the Policy.

tract is "made" is defined as "'where the last act is performed which makes [the] agreement a binding contract.'" *Sting Sec. Inc. v. First Mercury Syndicate, Inc.*, 791 F. Supp. 555, 558 (D. Md. 1992) (quoting *Travelers Indem. Co. v. Allied-Signal, Inc.*, 718 F. Supp. 1252, 1253 (D. Md. 1989)). When the contract is an insurance policy, this is usually "the state in which the policy is delivered and the premiums are paid." *Aetna Cas. & Sur. Co. v. Souras*, 552 A.2d 908, 911 (Md. Ct. Spec. App. 1989).

Here, Danielle Francis resides in California, and the Policy was mailed to her California home.[7] Danielle Francis also made premium payments while living in California. Thus, according to Maryland's *lex loci contractus* rule for choice-of-law decisions, California law governs the analysis of whether Allstate had a duty to defend the Francises in the Underlying Action.

## C.

Appellants argue that even if the district court did not err in holding that California law applies, Allstate nonetheless owed the Francises a duty to defend under the Policy. We disagree with Appellants' argument.

In California, "'[t]he duty to defend [under a liability insurance contract] is determined by reference to the policy, the complaint, and *all* facts known to the insurer from any source.'" *Montrose Chem. Corp. v. Superior Court*, 861 P.2d 1153, 1161 (Cal. 1993) (emphasis in original). More particularly, as noted by the district court, under the terms of the Policy, in order to establish Allstate's duty to defend, the Francises were required to demonstrate that "the action arose from an 'accident' and sought damages for 'bodily injury' or

---

[7]It appears the parties have never suggested that Thomas Francis's temporary residence in Maryland as a student at the MSD bears on either the jurisdictional or the substantive issues presented in this case.

[']property damage.[']" *Francis*, 869 F. Supp. 2d at 672 (citing *Allstate Ins. Co. v. LaPore*, 762 F. Supp. 268, 270 (N.D. Cal. 1991)).

On appeal, the Francises contend that the statements made about Towers, although made voluntarily, were not made with the intent to "deliberately hurt Mr. Towers," but rather with the intent to "trigger the school's intervention." Appellants' Br. 19. They argue that the district court incorrectly focused on the fact that the statements were intentionally made when it held that no "accident" occurred.

Allstate responds that, under California law, "an insured's intentional acts do not become 'accidental' merely because he did not intend to cause harm"; rather, "California courts have held for nearly a half century that the term 'accident' applies to the insured's act *itself*, not the consequences of that act." Appellee's Br. 36. (Emphasis in original).

The Supreme Court of California has defined "accident," as used in insurance policies, as "'an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause.'" *Hogan v. Midland Nat'l Ins. Co.*, 476 P.2d 825, 828 (Cal. 1970) (quoting *Geddes & Smith, Inc. v. St. Paul-Mercury Indem. Co.*, 334 P.2d 881, 884 (Cal. 1959)). The California Court of Appeal has instructed that "'[t]he definition of "accident" halts any argument that [the insured] intended his act but not the resulting harm.'" *Commercial Union Ins. Co. v. Superior Court of Humboldt County*, 242 Cal. Rptr. 454, 456 (Cal. Ct. App. 1987) (quoting *Royal Globe Ins. Co. v. Whitaker*, 226 Cal. Rptr. 435, 438 (Cal. Ct. App. 1986)).

California courts construing policies with provisions similar to those in the Allstate policy have repeatedly held that intentional acts are not "accidents," and have found insurers not liable for intentional conduct of their insureds. Illustrative is *Merced Mut. Ins. Co. v. Mendez*, in which the California

Court of Appeal considered, in a declaratory judgment action, whether Merced Mutual had an obligation to defend or indemnify its insured in a suit brought against him for damages resulting from having engaged in sexual activities with a coworker. 261 Cal. Rptr. 273 (Cal. Ct. App. 1989). The plaintiff in the underlying tort suit alleged that the insured sexually assaulted her several times at their workplace. The insured contended that the sexual encounters were consensual. The policy covered suits against the insured for "damages because of bodily injury or property damage caused by an occurrence." *Id.* at 275. "Occurrence" was defined as "an accident, including exposure to conditions, which results, during the policy period, in: [ ] a bodily injury; or [ ] property damage." *Id.*

The *Mendez* court held the conduct was not covered because "[a]n accident [ ] is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage." *Id.* at 279. The court emphasized:

> where the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an 'accident' merely because the insured did not intend to cause injury.

*Id.*

As *Mendez* and numerous other cases demonstrate, under California law, "'[w]hatever the motivation,' because [the Francises'] conduct was 'calculated and deliberate' . . . it was not an 'accident' and thus not an 'occurrence' within the meaning of the policy provision." *Id.* at 280 (quoting *Hogan*, 476 P.2d at 828-29).

Appellants rely heavily on an outlier from this line of decisions, namely, an opinion of a California federal district court. *See Allstate Ins. Co. v. Vavasour*, 797 F. Supp. 785 (N.D. Cal.

1992). In *Vavasour*, in an action for a declaratory judgment, the district court considered whether Allstate had a duty to defend or indemnify its insureds in a suit for trespass that was pending in California state court. *Id.* The court called the case a "close question," but concluded that because under California law, a person can be liable for trespassing for conduct that is "either negligent, reckless or intentional, or the product of ultrahazardous activity . . . , [t]respass is not merely an intentional tort" and thus an alleged trespass may be an accident in the "absence of intent to trespass . . . ." *Id.* at 788. The *Vavasour* court denied Allstate's claim that it had no duty to defend because the insureds' conduct (driving in and out of a driveway they believed was their own) was intentional. In so holding, the court distinguished cases cited by Allstate on the basis that the Vavasour's conduct "may not have been inherently wrongful and, indeed, may have been devoid of intent or even knowledge . . . ." *Vavasour*, 797 F. Supp. at 788.

Appellants' focus on *Vavasour* is unpersuasive. The decision in *Vavasour* has been described as "the only California case failing to recognize th[e] principle" that the fact that conduct is intentional is dispositive of the question of whether an "accident" occurred. *Collin v. Am. Empire Ins. Co.*, 26 Cal. Rptr. 2d 391, 404 (Cal. Ct. App. 1994).[8]

Thus, *Vavasour* stands alone. The consistently followed rule under California law is that intentional conduct is not "accidental" even if the resulting injury is wholly unintended. The Francises clearly intended to make the statements at issue in the Underlying Action; indeed, they hoped, as they concede, that the statements would translate into action on the part of the school (as they did in fact). The actions were intentional, and under California law, non-accidental.

---

[8]The judge who authored *Vavasour* "promptly issued a new ruling in *Bailey v. State Farm*, [810 F. Supp. 267 (N.D. Cal. 1992)], which reaffirms the principle adopted in every other California decision." *Collin v. Am. Empire Ins. Co.*, 26 Cal. Rptr. 2d 391, 404 (Cal. Ct. App. 1994).

## V.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*