**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1789

CAPITOL PROPERTY MANAGEMENT CORPORATION,

Plaintiff - Appellant,

v.

NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY;
NATIONWIDE MUTUAL INSURANCE COMPANY; NATIONWIDE
MUTUAL FIRE INSURANCE COMPANY,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at
Alexandria.  Gerald Bruce Lee, District Judge.  (1:16-cv-00664-GBL-MSN)

Argued:  September 27, 2018                    Decided:  December 14, 2018

Before WILKINSON, DUNCAN, KEENAN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Keenan wrote the opinion, in which Judge
Wilkinson and Judge Duncan joined.

**ARGUED:**  Erik Broch Lawson, SILVER & BROWN, Fairfax, Virginia, for Appellant.
Elizabeth S. Skilling, HARMAN CLAYTOR CORRIGAN & WELLMAN, P.C., Glen
Allen, Virginia, for Appellees.   **ON BRIEF:**  C. Thomas Brown, SILVER & BROWN,
Fairfax, Virginia, for Appellant.   Robert F. Friedman, HARMAN CLAYTOR
CORRIGAN & WELLMAN, P.C., Glen Allen, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

In this insurance coverage dispute, we consider whether a policy covering fire damage to a condominium building also provided coverage for two fees owed by the insured, a condominium association, to its management company. The district court awarded summary judgment to the insurance company. Upon our review, we conclude that: (1) the insured did not assign to the management company any rights with respect to one fee; and (2) the policy did not provide coverage for the other fee, which arose from the association's decision to outsource performance of its duties under the policy to the management company. We therefore affirm the district court's judgment.

I.

Gunston Corner Condominium Association (the Association) has property interests in several condominium buildings in Lorton, Virginia. The Association entered into an agreement with Capitol Property Management (Capitol) to handle a variety of property management duties for these buildings in exchange for a monthly fee paid by the Association (the management agreement, or the agreement).

The management agreement stated that the Association's purpose is to perform "various functions pertaining to the maintenance and administration of" the condominium buildings, and that the Association delegated its duties to Capitol as "exclusive managing agent." Capitol's duties under the agreement included a section of responsibilities listed under the heading, "Insurance." Those duties included procuring property insurance coverage for the Association, filing claims with the insurer in the event of loss, obtaining

3

cost estimates for the repair or replacement of damaged property, and coordinating with the insurer regarding the proper processing of claims.

In addition to the monthly fee paid to Capitol by the Association, the management agreement required that the Association reimburse Capitol for certain additional costs, two of which are relevant to this appeal. First, the Association agreed to pay Capitol a fee for "insurance claim processing" (the claim processing fee) of 10% of any amount recovered by the Association under its policy issued by Nationwide Property and Casualty Insurance Company, Nationwide Mutual Insurance Company, and Nationwide Mutual Fire Insurance Company (collectively, Nationwide). Second, the Association agreed to pay Capitol a "construction management fee" of 5% of any renovation project exceeding $20,000 (the construction management fee).

The Association had obtained from Nationwide an insurance policy covering certain property, including several condominium buildings and "business personal property" (the Policy). Under the Policy's primary coverage provision, Nationwide agreed to "pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." The Policy described "Covered Causes of Loss" as insuring against all "[r]isks of [d]irect [p]hysical [l]oss unless the loss is" excluded or limited.

The Policy also provided "additional coverage" for numerous categories of loss. One category of additional coverage included "extra expense" resulting from damage to the buildings. The "extra expense" coverage provision stated:

4

We will pay *necessary* "extra expense" you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property at the described premises.

(Emphasis added.)

As relevant here, the Policy defined the term "extra expense" as an expense incurred to "avoid or minimize the suspension of business and to continue 'operations.'" "Operations" was defined as the Association's "business activities occurring at" the covered property.

In the event of loss or damage to the covered buildings or business personal property, the Policy imposed several duties on the Association. Those duties included providing Nationwide with complete and detailed inventories of all damaged and undamaged property, allowing Nationwide to inspect the premises as necessary, and coordinating with Nationwide's efforts to investigate and settle any claims arising under the Policy.

During the period of coverage under the Policy, a fire damaged one of the Association's condominium buildings. The parties do not dispute that the fire qualified as a "covered cause of loss" under the Policy's primary coverage provision. After the Association filed a claim with Nationwide, Nationwide accepted the claim and paid the Association more than $2 million. That payment included coverage for direct damage to the building, as well as coverage for emergency repairs, demolition and debris removal, and recoverable depreciation.

5

Capitol filed a separate claim with Nationwide seeking payment for the claim processing fee detailed in Capitol's management agreement with the Association. Nationwide denied Capitol's claim, explaining that the fee

> is not a part of the insurance contract. It is a separate contract between [Capitol] and [the Association.] The management contract cannot create coverage under the [Policy].

After Nationwide denied Capitol's claim, Capitol sought payment from the Association for the claim processing fee. In a sealed settlement agreement, the Association agreed to pay Capitol part of the fee. The Association also assigned to Capitol "any right" the Association had to obtain from Nationwide the claim processing fee (the assignment).

Capitol filed a second claim with Nationwide for the claim processing fee, which Nationwide again denied. Nationwide explained that the fee did not qualify as an "extra expense" under the Policy, because the fee was "not a necessary expense incurred to avoid or minimize the suspension of business" under the plain terms of the Policy. The record does not contain any evidence that Capitol sought coverage for the construction management fee.

Capitol filed suit against Nationwide in Virginia state court alleging that Nationwide breached its insurance contract by denying coverage for both the claim processing fee and the construction management fee. Capitol sought $400,000 in damages. Nationwide removed the case to federal district court. After reviewing the parties' cross-motions for summary judgment, the district court entered judgment in favor of Nationwide. Capitol now appeals.

6

## II.

Our review presents questions of law concerning the interpretation of an insurance policy and other contractual language, questions that we consider de novo. *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 366 (4th Cir. 2013). We apply Virginia law, because this case arose under the district court's diversity jurisdiction, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494 (1941), and the Policy and the management agreement were delivered in Virginia, *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993).

Before addressing Capitol's arguments, we set forth generally applicable principles of contract interpretation. Courts interpret contracts, including contracts of insurance, by determining the parties' intent from the words that they have used in the agreement. *Va. Farm Bureau Mut. Ins. Co. v. Williams*, 677 S.E.2d 299, 302 (Va. 2009). "Provisions of an insurance policy must be considered and construed together, and any internal conflicts between provisions must be harmonized, if reasonably possible, to effectuate the parties' intent." *Id*. (citation omitted). In interpreting contractual language, "[n]o words or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it." *PMA Capital Ins. Co. v. U.S. Airways, Inc.*, 626 S.E.2d 369, 372-73 (Va. 2006) (citation omitted). "A specific provision of a contract governs over one that is more general in nature." *Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 709 S.E.2d 163, 170 (Va. 2011).

Capitol argues that the district court erred in holding that Nationwide was not liable under the Policy language for either the construction management fee or the claim processing fee. We address these arguments in turn.

A.

With respect to the construction management fee, the district court explained that the language in the assignment was limited to transferring the Association's right to seek coverage from Nationwide for the claim processing fee. Therefore, the court held that Capitol, which was not an insured under the Policy, could not assert a breach of contract claim against Nationwide for the construction management fee.[1] We agree.

"The elements of a breach of contract action are: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 619 (Va. 2004). With respect to the first element, we observe that because Capitol was not an insured under the Policy, we must review the language of the assignment to determine the scope of Capitol's right to assert a claim under the Policy.

---

[1] The district court framed its analysis as Capitol's failure to establish standing. In our view, the proper inquiry is whether Capitol failed to state a claim for breach of contract. *See Quesenberry v. Volvo Trucks N. Am. Retiree Healthcare Benefit Plan*, 651 F.3d 437, 442 n.* (4th Cir. 2011) ("[W]e can affirm on any basis fairly supported by the record." (internal quotation marks and citation omitted)). Thus, we need not address Capitol's arguments relating to standing. We also do not consider Capitol's arguments regarding claim-splitting, because they were raised for the first time on appeal. *See In re Under Seal*, 749 F.3d 276, 285-87 (4th Cir. 2014).

The assignment of rights by the Association set forth the parties' understanding that Capitol was seeking to recover under the Policy the claim processing fee. The assignment referred to this specific fee four separate times, and did not mention the construction management fee or any other fee referenced in the management agreement. Although the assignment also included broad language assigning to Capitol "any right [of the Association] to damages for breach" of the Policy, under a plain reading of the assignment as a whole it is clear that the Association intended to assign to Capitol only the right to seek payment of the claim processing fee. A contrary reading would render meaningless the agreement's many references to the claim processing fee and would favor one broad phrase over the numerous specific references to that one particular fee.[2] *See Condo. Servs., Inc.*, 709 S.E.2d at 170; *PMA Capital Ins.*, 626 S.E.2d at 372-73.

Accordingly, we conclude that Capitol failed to state a claim for breach of contract for the construction management fee because Capitol could not demonstrate that Nationwide had a legally enforceable obligation to Capitol with respect to coverage for that fee. Thus, the district court did not err in awarding summary judgment to Nationwide on this issue.

B.

---

[2] Moreover, the record does not show that Nationwide had denied any claim for the construction management fee. The claims filed by Capitol and rejected by Nationwide related only to the claim processing fee. Thus, the record does not support Capitol's position that the Association intended to assign to Capitol the right to seek payment for the construction management fee.

9

We turn to consider Capitol's arguments regarding the claim processing fee, which Capitol seeks to recover under its rights assigned by the Association. Capitol contends that the Policy is an "all risk policy," meaning that the Policy provides coverage for any loss "incurred as a result of the fire" unless Nationwide can show that the loss is excluded. According to Capitol, Nationwide has failed to show that the fee is an excluded loss under the Policy. Capitol alternatively argues that the claim processing fee qualifies for coverage under the "extra expense" provision of the Policy, because the fee was incurred to "minimize the suspension of business."[3] We disagree with Capitol's arguments.

First, a plain reading of the Policy demonstrates that the "all risk," universal coverage provision appears only in the primary coverage for "direct physical loss" to the covered buildings and business personal property in the event of a covered loss. *See* Black's Law Dictionary (10th ed. 2014) (defining "all risk insurance" as "insurance that covers every kind of insurable loss except what is specifically excluded"). Because the claim processing fee is a non-physical loss, the fee does not fall within that primary coverage provision. Rather, any potential coverage would have to qualify under the "additional coverage" provisions of the Policy.

---

[3] Capitol also argues, for the first time on appeal, that the fee was covered as a loss of "business income," under a separate provision of the Policy. We decline to consider this argument because it was not raised in the district court. *See In re Under Seal*, 749 F.3d at 285-87. Also, to the extent Capitol relies separately on the provision in the Policy describing the method of calculating "extra expense," we conclude that this provision does not provide an independent source of coverage under the Policy. Instead, the provision merely explains how Nationwide would calculate its payment for an extra expense "in the event of loss or damage covered" by the Policy.

These "additional coverage" provisions afford discrete coverage for various types of losses, subject to designated exclusions. Thus, the "additional coverage" provisions do not include "any" loss "incurred as a result of the fire," and Capitol bore the initial burden to show that the claim fell within the scope of coverage provided by the Policy. *Furrow v. State Farm Mut. Auto. Ins. Co.*, 375 S.E.2d 738, 740 (Va. 1989) (citing *Md. Cas. Co. v. Cole*, 158 S.E. 873, 876 (Va. 1931) ("The burden is upon the policyholder to bring himself within the terms of the policy.")).

Contrary to Capitol's contention, the claim processing fee did not qualify as an "extra expense" under the "additional coverage" provisions. To qualify as an "extra expense" under the Policy, the claim processing fee would have to fall within the definition of that term, namely, that the fee (1) was incurred because of the physical loss, and (2) was a "necessary" expense in maintaining the Association's "operations" or "business activities occurring on the property." Although the Association would not have owed Capitol the claim processing fee absent the fire damage, that fee did not satisfy the second prong of the above definition as a "necessary" expense incurred in the Association's business of maintaining the condominium buildings.

Instead, the duties relating to the claim processing fee correspond with the Association's responsibilities listed under the Policy language of "duties in the event of loss or damage." This provision describes the Association's duty under the Policy to investigate and make reports on claims, and to cooperate with the insurer in processing any claims. And the Policy does not contain any language providing for payment by the insurer for the insured's completion of those agreed upon duties. Thus, the Association's

11

decision to outsource its responsibilities relating to the filing of its claim with Nationwide did not transform the claim processing fee into an "extra expense" covered by the Policy.[4]  Accordingly, we hold that the district court correctly concluded that the Policy did not provide coverage for the claim processing fee.

## III.

For these reasons, we affirm the district court's award of summary judgment in favor of Nationwide.

*AFFIRMED*

---

[4] Our conclusion is not altered by Capitol's assertion that one of its employees, Stacy Panuzio, performed specific tasks relating to the insurance claim that were not outlined in the Policy.  The Association's decision to outsource any such tasks does not transform the expenses incurred by Capitol into "necessary" expenses under the Policy.  Further, as explained above, the only potential legally enforceable obligation between Nationwide and Capitol was limited to the assigned right to recover the claim processing fee.  Thus, any task performed by Panuzio beyond those tasks identified in the management agreement relating to the insurance claim cannot form the basis of a breach of contract claim against Nationwide.