**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 25-1624**

———————

MCARDLE FAMILY PARTNERSHIP, a Pennsylvania Limited Partnership, individually and on behalf of others similarly situated,

Plaintiff – Appellant,

v.

ANTERO RESOURCES CORPORATION, a Delaware corporation; KEY OIL COMPANY, a West Virginia corporation; FRANKLIN L. BUTLER, an individual,

Defendants – Appellees.

———————

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg.  Thomas S. Kleeh, Chief District Judge.  (1:22-cv-00001-TSK)

———————

Argued:  January 27, 2026                    Decided:  April 20, 2026

———————

Before GREGORY, RICHARDSON, and RUSHING, Circuit Judges.

———————

Affirmed in part, vacated in part, and remanded by unpublished opinion.  Judge Rushing wrote the opinion, in which Judge Gregory and Judge Richardson joined.

———————

**ARGUED:**  Frank Edward Simmerman III, SIMMERMAN LAW OFFICE, PLLC, Clarksburg, West Virginia, for Appellant.  Amy Marie Smith, STEPTOE & JOHNSON PLLC, Bridgeport, West Virginia, for Appellees.  **ON BRIEF:**  Lauren K. Turner, McKenna E. Meadows, STEPTOE & JOHNSON PLLC, Bridgeport, West Virginia, for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

RUSHING, Circuit Judge:

The McArdle Family Partnership (MFP) claims it owns mineral royalty interests in certain West Virginia oil and gas leasehold estates. It alleges that Defendants—Antero Resources Corporation, Key Oil Company, and Franklin L. Butler—breached their contract by failing to pay MFP those royalties. The district court granted summary judgment to Defendants on MFP's breach of contract claim and denied MFP's cross-motion for summary judgment. We affirm in part, vacate in part, and remand.

## I.

In Count II of the operative complaint, MFP claims that, by assignment from James Drilling Corporation dated May 5, 2008, MFP became vested with the following interests in West Virginia oil and gas leasehold estates: (1) a 1/32 overriding royalty interest in the Towner lease; (2) a 1/32 overriding royalty interest in the Stone lease; and (3) a 1/64 net profits interest in the Hudson leases.[1] An overriding royalty interest is "[a] share of either production or revenue from production (free of the costs of production) carved out of a lessee's interest under an oil-and-gas lease." *Royalty*, *Black's Law Dictionary* (12th ed. 2024). A net profits interest is "[a] share of production free of the costs of production . . . . [U]nlike a royalty, it is payable only if there is a net profit, and the costs that are used to calculate the net profit depend on what is negotiated." *Net-Profits Interest*, *Black's Law*

---

[1] On appeal, by contrast, MFP claims a 1/64 overriding royalty interest in the Towner lease. MFP also argues it possesses a 1/16 overriding royalty interest in production from the Hudson property, which appears to be the subject of a different count in the complaint. Because the district court's grant of summary judgment to Defendants on Count II is the sole issue before us on appeal, we consider only the interests alleged in Count II.

3

*Dictionary* (12th ed. 2024). MFP alleges that Defendants breached their contract by failing to pay royalties according to those interests.

The district court granted summary judgment to Defendants on Count II and denied MFP's cross-motion for summary judgment. *McArdle Fam. P'ship v. Antero Res. Corp.*, No. 1:22-cv-01, 2024 WL 1349200, at *7–8 (N.D. W. Va. Mar. 29, 2024). The court held that MFP does not own the claimed interests because they were conveyed to Key Oil in 1996, long before James Drilling Corporation allegedly conveyed them to MFP in 2008. *Id.* at *7. Specifically, the court considered a May 30, 1996 assignment from James Drilling Corporation, James I. Shearer, and Beatrice E. Shearer to Key Oil. *Id.* at *3, 5–6. The court concluded that the 1996 assignment was "a clear, broad conveyance" of all of the assignors' interests in the relevant leases, without exceptions or reservations. *Id.* at *3. In the alternative, the court reasoned that "even if the grant in the 1996 assignment was not broad and without exceptions . . . , the interests could not have been reserved" because they were extinguished by the doctrine of merger. *Id.* at *7.

We dismissed MFP's first appeal for lack of jurisdiction. *McArdle Fam. P'ship v. Antero Res. Corp.*, No. 24-1347, 2025 WL 1167651 (4th Cir. Jan. 31, 2025). On MFP's motion, the district court then entered final judgment on Count II pursuant to Federal Rule of Civil Procedure 54(b). MFP appealed again, and we now have jurisdiction under 28 U.S.C. § 1291.

## II.

"We review the district court's ruling on cross-motions for summary judgment de novo." *Young v. Equinor USA Onshore Props., Inc.*, 982 F.3d 201, 205 (4th Cir. 2020).

4

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"We also review de novo the district court's contract interpretation underlying its summary judgment ruling." *Young*, 982 F.3d at 205–206. The parties agree that West Virginia law applies. *See Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013) ("A federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice-of-law rules.").

### III.

This appeal raises a question of contract interpretation. *See* Syl. Pt. 3, *Faith United Methodist Church & Cemetery of Terra Alta v. Morgan*, 745 S.E.2d 461 (W. Va. 2013) ("Deeds are subject to the principles of interpretation and construction that govern contracts generally."). Under West Virginia law, when a real estate conveyance includes "no words of limitation," "such conveyance operates to pass the fee simple or the whole estate or interest, legal or equitable, which the grantor had power to dispose of in such real property unless a contrary intention appears in such conveyance." Syl. Pt. 3, *Meadows v. Belknap*, 483 S.E.2d 826 (W. Va. 1997) (internal quotation marks omitted). "'In order to create an exception or reservation in a deed which would reduce a grant in a conveyance clause which is clear, correct and conventional, such exception or reservation must be expressed in certain and definite language.'" Syl. Pt. 2, *DWG Oil & Gas Acquisitions, LLC v. S. Country Farms, Inc.*, 796 S.E.2d 201 (W. Va. 2017) (quoting Syl. Pt. 2, *Hall v. Hartley*, 119 S.E.2d 759 (W. Va. 1961)).

5

We agree with the district court that the 1996 assignment was a clear, broad conveyance without exceptions or reservations. The assignment states that the assignors—James Drilling Corporation, James Shearer, and Beatrice Shearer—"do hereby grant, sell, assign, transfer and convey to Key Oil Company all of their right, title and interest in and to those certain oil and gas leases, the oil and gas leasehold estates created thereby and the oil and or gas wells situated thereon . . . being more particularly described by the oil and gas lease information and the oil and gas well API numbers set forth in Exhibit 'A' which is attached hereto and considered a part hereof, except as hereinafter provided." J.A. 71. Because no exceptions followed, this language transferred *all* interests James Drilling Corporation and the Shearers then possessed in the leases, leasehold estates, and wells described in Exhibit A. The district court correctly rejected MFP's argument that Key Oil's obligation to "comply with the terms and conditions" of the leases implicitly reserved any of the assignors' overriding royalty interests or net profits interests from the broad conveyance of "all" their interests in those leases.[2] J.A. 71.

Exhibit A to the 1996 assignment includes the Towner and Stone leases, identified by acreage, lease dates, locations, recording book and page numbers, and well numbers. Because the assignors conveyed all of their interests in those leases to Key Oil in 1996, James Drilling Corporation possessed no overriding royalty interests in those leases to convey to MFP in 2008. We therefore affirm the district court's judgment in Defendants' favor as to the Towner and Stone leases.

---

[2] Unlike the district court, we base no part of our decision on the doctrine of extinguishment by merger.

6

The Hudson leases, however, require additional analysis. Exhibit A does not include the entirety of the two Hudson leases. Rather, Exhibit A identifies "specific parts of the oil and gas leasehold estates created by" the Hudson leases "which are assigned by operation" of the 1996 assignment. J.A. 75. The assigned parts are five 40-acre portions of the Hudson leases and the area within 1,000 feet of any existing well upon those leases. In its complaint, MFP alleges that James Drilling Corporation assigned it a 1/64 net profits interest in oil and gas production from the entire acreage of the two Hudson leases, not merely from the parts identified in Exhibit A. MFP traces its alleged interest back to an April 15, 1961 conveyance of a net profits interest in "any and all of the income derived from the sale of oil and/or gas which may be produced and sold from those two certain [Hudson] leases for oil and gas." J.A. 210–211 (Doddridge County Clerk's Office, Book 83, Pages 112–113); *see* J.A. 122 (complaint tracing MFP's alleged 1/64 net profits interest to the assignment recorded in the Doddridge County Clerk's Office at Book 83, Page 112).

Because the 1996 assignment conveyed the assignors' interests only in certain parts of the Hudson acreage, it does not necessarily follow that "James Drilling Corporation possessed no . . . corporate net profits interest [in the Hudson leases] that could have been conveyed to Plaintiff in 2008." *McArdle Family P'ship*, 2024 WL 1349200, at *6. The district court did not address the relationship between MFP's claimed interest in the entirety of the Hudson acreage on the one hand and the limited portions of that acreage affected by the 1996 assignment on the other. We therefore vacate the district court's judgment on Count II as regards MFP's alleged 1/64 net profits interest in the Hudson leases and remand for further proceedings.

7

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*