**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1637

BRISTOL UNIVERSITY,

Plaintiff – Appellee,

v.

ACCREDITING COUNCIL FOR INDEPENDENT COLLEGES AND SCHOOLS,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at
Alexandria.  Anthony J. Trenga, District Judge.  (1:16−cv−00307−AJT−MSN)

Argued:  March 24, 2017                                      Decided:  June 9, 2017

Before TRAXLER and WYNN, Circuit Judges, and DAVIS, Senior Circuit Judge.

Reversed, vacated, and remanded by unpublished opinion.  Senior Judge Davis wrote the
opinion, in which Judge Traxler joined.  Judge Wynn wrote a separate opinion concurring
in the judgment in part.

**ARGUED:** Thomas Collier Mugavero, WHITEFORD, TAYLOR & PRESTON, LLP,
Falls Church, Virginia, for Appellant.  Robert William Loftin, MCGUIREWOODS, LLP,
Richmond, Virginia, for Appellee.  **ON BRIEF:** Kenneth J. Ingram, Michael C. Gartner,
WHITEFORD, TAYLOR & PRESTON, LLP, Falls Church, Virginia, for Appellant.
Richard D. Holzheimer, Jr., Brooks H. Spears, McLean, Virginia, Nathan A. Kottkamp,
MCGUIREWOODS, LLP, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DAVIS, Senior Circuit Judge:

Bristol University ("Bristol") is a California for-profit school that received accreditation from the Accrediting Council for Independent Colleges and Schools ("ACICS"). ACICS denied Bristol's application for renewal of accreditation, and Bristol challenged ACICS's decision in district court. The district court preliminarily enjoined ACICS from suspending Bristol's accreditation and stayed further proceedings. On appeal, ACICS contends that the district court erred by granting Bristol's request for a preliminary injunction because Bristol did not demonstrate a likelihood of success on the merits of its due process claim. For the reasons that follow, we reverse the grant of the preliminary injunction, lift the stay, and remand for further proceedings.

I.

Bristol offers one-year, two-year, and four-year programs in business administration and certificate programs in legal studies and hospitality operations. The school was founded in 1991 as Kensington College and received initial accreditation from ACICS in 1993. The college maintained consistent accreditation until 2011, when it underwent an ownership change and was renamed Bristol University. One year later, ACICS granted Bristol a three-year accreditation renewal that was to expire on December 31, 2015.

Bristol applied for renewal of its accreditation in October 2014. In May 2015, ACICS began the renewal process by sending an on-site evaluation team to Bristol. The following month, ACICS's evaluation team issued a report identifying 40 deficiencies requiring explanation from Bristol. Bristol responded to ACICS's report in July 2015.

3

On August 20, 2015, ACICS sent Bristol a deferral letter and show-cause directive that identified 37 areas in which the school remained noncompliant. ACICS requested that Bristol provide explanations and supporting evidence for each of the deficiencies by October 31, 2015. In the same letter, ACICS also directed Bristol to show cause why its renewal application should not be denied at ACICS's December 2015 meeting. The letter explained that "[ACICS] is obligated to take adverse action against any institution that fails to come into compliance with the *Accreditation Criteria* within established time frames without good cause." J.A. 233. ACICS referred Bristol to Title II, Chapter 3, of the *Accreditation Criteria* for more information, which provides that the "time frame will not exceed . . . two years, if the longest program is at least two years in length." J.A. 287, 593.

In September 2015, ACICS sent another evaluation team to Bristol. The team issued a report on October 29, 2015. On December 22, 2015, ACICS denied Bristol's renewal of accreditation application based on 24 unresolved deficiencies. In its denial letter, ACICS listed each of Bristol's remaining violations of the *Accreditation Criteria* and extended the current grant of accreditation to January 31, 2016, to allow the school to prepare for its loss of accreditation.

After the denial of the renewal application, Bristol appealed to the Review Board of Appeals (the "Review Board"), which is "a separate, independent appeals body established by [ACICS] for the purpose of hearing appeals by institutions." J.A. 292, 597. In the Review Board hearing on March 18, 2016, Bristol did not contest the 24 deficiencies. Instead, the school asked the Review Board to remand with the

recommendation that Bristol receive additional time to correct the deficiencies. Later that day, the Review Board affirmed ACICS's decision.

On March 21, 2016, Bristol filed a complaint against ACICS in federal district court seeking declaratory and injunctive relief. Bristol also moved for a temporary restraining order prohibiting ACICS from revoking its accreditation, which the district court granted. On March 25, 2016, Bristol moved for a preliminary injunction, which the district court granted on April 25, 2016. The court concluded that Bristol was likely to succeed on the merits of its due process claim because ACICS "ignored its rationale for deciding to defer action, eliminated the compliance warning step, and advanced directly to the show-cause stage without giving Bristol clear deadlines for compliance, as opposed to providing additional information." J.A. 553. The court further found that ACICS's "failure to comply with its own internal review procedures [was] compounded by the lack of a record sufficient to determine what specific issues [ACICS] or the Review Board considered and decided, and on what basis it decided those issues." J.A. 554. The court noted that ACICS "did not explain . . . [why] no further opportunity to come into compliance was warranted," and that "[t]he Review Board did not provide any rationale in support of its position, either in the form of a written opinion, or an oral ruling during the hearing." *Id.*

ACICS timely appealed the district court's order granting a preliminary injunction.

## II.

We first address whether we have jurisdiction over this appeal. In its complaint, Bristol invoked subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337 and 20

5

U.S.C. § 1099b. Since the appeal was filed, ACICS lost Department of Education recognition as an accreditation agency. ACICS has filed a lawsuit against the Department of Education and the Secretary of Education, asking the district court to grant preliminary and permanent injunctive relief enjoining the implementation of the decision to terminate ACICS's recognition as an accreditation agency, vacate the decision withdrawing ACICS's recognition, and order the Secretary of Education to return ACICS's petition for recognition to the Department of Education for reconsideration. *See Accrediting Council for Indep. Colls. & Schs. v. U.S. Dep't of Educ.*, No. 16-cv-2448 (D.D.C.). In light of ACICS's loss of federal recognition, we asked the parties for supplemental briefing addressing whether the Department of Education's termination of its recognition of ACICS as an accrediting agency deprives us of jurisdiction over this appeal. We conclude that the district court had diversity jurisdiction over this dispute pursuant to 28 U.S.C. § 1332.

The diversity jurisdiction statute provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). "[A] plaintiff's complaint sufficiently establishes diversity jurisdiction if it alleges that the parties are of diverse citizenship and that the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332." *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008) (internal quotation marks and alterations omitted). Bristol's complaint did not invoke diversity of citizenship jurisdiction but did state that Bristol is a citizen of

6

California and ACICS is incorporated in Virginia. Furthermore, although Bristol did not plead an amount in controversy, it did allege that without accreditation, the school would be forced to close. The value of Bristol as a business clearly exceeds $75,000; thus, this dispute undoubtedly satisfies the amount in controversy requirement for diversity jurisdiction. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."); *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013) (same).

Bristol's complaint contained three counts: (1) failure to comply with due process, in violation of federal common law; (2) negligence per se, in violation of the Higher Education Act, 20 U.S.C. § 1099b, and 34 C.F.R. §§ 602.16, 602.25; and (3) injunctive and declaratory relief pursuant to 28 U.S.C. § 2201 *et seq.*[1] Diversity jurisdiction extends beyond state and foreign law claims to include federal law claims like the ones Bristol has asserted. *See Hales v. Winn-Dixie Stores, Inc.*, 500 F.2d 836, 848 n.1 (4th Cir. 1974) ("While state law claims usually may only be asserted when diversity is present, the same cannot be said of the converse: this Court knows of no case or policy requiring that diversity jurisdiction may only include state or foreign law claims and must exclude

---

[1] Of course, the Declaratory Judgment Act "creates [no] substantive rights," *CGM, LLC v. Bellsouth Telecomms., Inc.*, 664 F.3d 46, 55 (4th Cir. 2011), but under the circumstances of this appeal, and unlike our concurring friend, we need not pause to assess the legal sufficiency of the claims asserted in the first two counts of the complaint. Instead, given the undeniable existence of subject matter jurisdiction, we limit our consideration to the issue of whether the district court erred in applying the standards for a preliminary injunction, the very basis for this interlocutory appeal, over which we surely have jurisdiction. 28 U.S.C. § 1292(a)(1).

federal law claims. Federal law does on occasion control suits brought under diversity jurisdiction."). Accordingly, satisfied with the existence of federal subject matter jurisdiction, we proceed to consider whether the district court erred in granting the preliminary injunction.

## III.

ACICS argues that the district court erred by granting Bristol's request for a preliminary injunction because Bristol did not demonstrate a likelihood of success on the merits of its due process claim, as Bristol failed to establish that ACICS's decisions were arbitrary and capricious. To obtain a preliminary injunction, a plaintiff "must demonstrate that (1) they are likely to succeed on the merits; (2) they will likely suffer irreparable harm absent an injunction; (3) the balance of hardships weighs in their favor; and (4) the injunction is in the public interest." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). We review "a district court's decision to grant preliminary injunctions under an abuse of discretion standard." *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013). The district court's decision "will not be disturbed on appeal unless the record shows an abuse of that discretion, regardless of whether the appellate court would, in the first instance, have decided the matter differently." *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 188 (4th Cir. 2013) (en banc). A district court abused its discretion if it "applied an incorrect preliminary injunction standard, rested its decision on a clearly erroneous finding of a material fact, or misapprehended the law with respect to underlying issues in litigation." *Id.* (internal quotation marks and alterations omitted).

Accreditation agencies owe a common law duty of due process "to employ fair procedures when making decisions." *Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Schs. & Colls.*, 781 F.3d 161, 169 (4th Cir. 2015). ACICS was a federally-recognized accrediting agency when it reviewed and denied Bristol's renewal of accreditation application. As such, its actions were subject to the due process requirements of 20 U.S.C. § 1099b(6) and its supporting regulation, 34 C.F.R. § 602.25.

Although the Administrative Procedure Act does not specifically apply to private accrediting agencies for education institutions, "principles of administrative law are useful in determining the standard by which we review the agency's decision-making process." *Prof'l Massage Training Ctr.*, 781 F.3d at 170 (alternations omitted). In assessing whether an accreditation agency violates due process, we consider "only whether the decision of an accrediting agency . . . is arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence." *Id.* at 171 (internal quotation marks omitted). "Under this standard, courts are not free to conduct a *de novo* review or to substitute their judgment for the professional judgment of the educators involved in the accreditation process." *Id.* (internal quotation marks omitted).

Courts adjudicating common law due process claims against accrediting agencies "should focus primarily on whether the accrediting body's internal rules provided a fair and impartial procedure and whether it followed its rules in reaching its decision." *Prof'l Massage Training Ctr.*, 781 F.3d at 172 (internal quotation marks and alterations omitted). Agency actions are generally invalid where the "agency fails to follow its own procedures or regulations." *Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008).

9

A.

ACICS contends that the district court erred by determining that ACICS and the Review Board deprived Bristol of due process by failing to explain the decision to deny Bristol's renewal application instead of providing Bristol more time to correct deficiencies. We conclude that ACICS and the Review Board were not required to explain that choice to comply with due process.

1.

The *Accreditation Criteria* clearly authorized ACICS to deny Bristol's renewal of accreditation application based on its numerous and repeated violations of the *Accreditation Criteria*. After determining that Bristol was not in compliance with the *Accreditation Criteria*, ACICS either could have "take[n] prompt adverse action against the institution, or . . . require[d] the institution to take appropriate action to bring itself into compliance with the *Accreditation Criteria* within a time frame specified by [ACICS] after the institution has been notified that it is not in compliance." J.A. 287, 593.

Over the course of seven months, ACICS conducted two site visits, repeatedly informed Bristol of its deficiencies, gave Bristol multiple opportunities to respond to those deficiencies, asked Bristol to explain why its renewal application should not be denied based on its remaining areas of noncompliance, and provided Bristol a written explanation for denying its application for renewal of accreditation based on the 24 unresolved violations it identified, none of which Bristol has contested. Nothing more was required to satisfy due process. *See Prof'l Massage Training Ctr.*, 781 F.3d at 174 (holding that accrediting agency's denial of school's application for reaccreditation was

10

not arbitrary and capricious because the school "was afforded ample notice that it was not in compliance with [the accreditation standards] and numerous opportunities to remedy identified deficiencies").

Furthermore, because the *Accreditation Criteria* permitted ACICS to deny Bristol's renewal of accreditation application due to Bristol's noncompliance with the accreditation standards, ACICS was not required to explain why it did not take an alternative action such as providing Bristol additional time to cure deficiencies. *See Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 351 (4th Cir. 2001) ("As a general rule, the consideration of whether a lesser sanction might be adequate should be a step in the path to the ultimate decision . . . . But this does not mean that the Board's explanation had to include express consideration of possible alternatives to its decision."); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 51 (1983) ("[A]n agency [need not] consider all policy alternatives in reaching [a] decision."). ACICS's denial letter identifying Bristol's remaining violations of the *Accreditation Criteria* adequately explained its decision not to renew Bristol's accreditation, and no further explanation was necessary to satisfy the requirements of due process.

2.

The Review Board was similarly under no obligation to provide its rationale for not granting Bristol more time. The Review Board is a "separate, independent appeals body" with the power to affirm, amend, or reverse the decision of ACICS, or remand the case to ACICS with recommendations for further consideration. J.A. 292, 597-98.

According to the *Accreditation Criteria*, "[t]he Review Board panel may amend or reverse the decision of [ACICS] or remand the case to [ACICS] for further consideration only if it finds the decision was: (i) arbitrary, capricious, or otherwise in substantial disregard of the Accreditation Criteria, or (ii) not supported by substantial evidence in the record on which [ACICS] took the negative action." J.A. 292, 598. Furthermore, "[t]he Review Board panel cannot amend or reverse the decision of [ACICS] or remand the decision based on argument by the appellant that [ACICS's] action was disproportionate to the violations cited." J.A. 292, 598.

The Review Board complied with the *Accreditation Criteria* by issuing a written decision affirming ACICS on the basis that "the action of [ACICS] is supported by substantial evidence in the record and was not arbitrary and capricious." J.A. 501. By determining that ACICS's decision was supported by substantial evidence and was not arbitrary and capricious, the Review Board properly conducted its limited review of ACICS's actions. Moreover, under the *Accreditation Criteria*, the Review Board did not have the authority to amend or reverse ACICS's decision based on Bristol's contention that more time was warranted to come into compliance, as that would violate the *Accreditation Criteria*'s prohibition of amending or reversing a decision based on the argument that "[ACICS's] action was disproportionate to the violations cited." *See* J.A. 292, 598.

B.

ACICS next argues that the district court erred by finding that ACICS failed to follow its own internal review procedures when it advanced to the show-cause stage

12

without providing Bristol a compliance warning or clear deadlines for compliance. We conclude that none of these actions violated the *Accreditation Criteria*.

ACICS did not violate its procedures when, in its August 2015 letter, it deferred action, issued a show-cause directive, and continued Bristol's accreditation through December 2015 to allow the school to provide its response. Nothing in the *Accreditation Criteria* indicates that ACICS could not simultaneously issue a deferral and a show-cause directive. ACICS explained in its letter that it was not only deferring action but also directing Bristol to show cause why its application should not be denied "due to the large and varied amount of findings incurred at the institution during the on-site evaluation and the inability to clear these findings in the institution's response." J.A. 223. ACICS followed the *Accreditation Criteria*'s rules governing deferral, which provide that "[i]n all cases of deferral on renewal of accreditation of accredited institutions, [ACICS] will extend the present grant of accreditation for a period sufficient for the institution to provide the information needed." J.A. 288, 594. By continuing the current grant of accreditation, ACICS provided Bristol time to respond and show cause why its accreditation should not be denied.

ACICS was not required to issue a compliance warning, and the district court erred by relying on the compliance warning requirement found in the 2016 *Accreditation Criteria*. The compliance warning requirement was added to the *Accreditation Criteria* on January 1, 2016, after ACICS had issued its denial letter. Although ACICS submitted the 2016 version of the *Accreditation Criteria* to the district court, the 2016 version stated

13

that it was not in effect until January 1, 2016, and that the compliance warning was added as of that date.

Bristol was not entitled to more time and extended deadlines to achieve compliance. To the contrary, the *Accreditation Criteria* would have allowed ACICS to immediately withdraw Bristol's accreditation upon determining that Bristol was not in conformance with the accreditation standards. Although the *Accreditation Criteria* provide that two years is the *maximum* amount of time ACICS would give an institution like Bristol to come into compliance, ACICS was not required to provide Bristol any minimum amount of time to remedy its deficiencies. Even so, after finding Bristol noncompliant, ACICS did not promptly withdraw Bristol's accreditation but instead provided Bristol with clear deadlines within which to fix deficiencies: ACICS's June 2015 renewal of accreditation visit report requested an explanatory response to the school's 40 violations of the *Accreditation Criteria* by June 25, 2015, and its August 2015 show-cause directive put Bristol on notice that it could lose its accreditation at ACICS's December 2015 meeting and asked Bristol to provide a response to its 37 remaining areas of noncompliance by October 31, 2015. Accordingly, ACICS did not violate due process by denying Bristol's renewal of accreditation application in December 2015 based on 24 unresolved deficiencies, and the district court erred by finding that Bristol demonstrated a likelihood of success on the merits.[2]

---

[2] Although ACICS argues that the district court committed several additional legal errors in applying the preliminary injunction standard, given our conclusion as to Bristol's likelihood of success on the merits, we need not reach the other asserted errors.

IV.

For the forgoing reasons, the district court's order granting the preliminary injunction and staying the proceedings is reversed, the stay is vacated, and this case is remanded for such further proceedings not inconsistent with this opinion as may be necessary in the discretion of the district court.

*REVERSED, VACATED, AND REMANDED*

WYNN, Circuit Judge, concurring:

I agree with the majority opinion that the proper result in this case is to vacate the district court's order granting a preliminary injunction in favor of Bristol University ("Bristol") and against the Accrediting Council for Independent Colleges and Schools (the "Accrediting Council"). But my reason for vacating the district court's order is based on mootness. The district court granted the preliminary injunction on grounds that Bristol was likely to succeed on the merits of its claim that the Accrediting Council breached its federal common law due process-like duty to Bristol in deciding to withdraw Bristol's accreditation. But following the district court's grant of the preliminary injunction, the Accrediting Council lost its federal recognition as an accrediting agency. The Accrediting Council's loss of recognition deprives federal courts of any basis to afford Bristol relief based on the two causes of action asserted in the complaint, both of which rest on federal law governing federally recognized accrediting agencies. Thus, this case is moot, requiring us to vacate the injunction and stay entered by the district court and to remand with instructions that the case be dismissed without prejudice.

I.

The Accrediting Council, a not-for-profit accrediting organization, first accredited Bristol in 1993. In 2012, the Accrediting Council renewed Bristol's accreditation for a three-year period, running through December 31, 2015. At the time of the renewal, the Department of Education recognized the Accrediting Council as a national accrediting agency, thereby allowing attendees of institutions accredited by the Accrediting Council—like Bristol—to participate in federal student aid programs. In the fall of 2014,

16

Bristol applied to the Accrediting Council for renewal of its accreditation. In the course of its accreditation review, the Accrediting Council identified numerous deficiencies in Bristol's operations. After Bristol was unable to remedy all of the identified deficiencies, the Accrediting Council denied Bristol's application for renewal and withdrew Bristol's accreditation.

Bristol's complaint alleges that, in withdrawing Bristol's accreditation, the Accrediting Council failed to comply with its own procedures and policies, as well as with procedures and policies for federally recognized accrediting agencies set forth in the Higher Education Act, 20 U.S.C. § 1099b, and 34 C.F.R. §§ 602.16, 602.25. To that end, Bristol's complaint asserted two causes of action.[1] First, Bristol alleged that the Accrediting Council, in denying Bristol's application for renewed accreditation, failed to comply with the due process-like duty imposed on recognized accrediting agencies, in violation of federal common law. *See Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Sch. & Colls.*, 781 F.3d 161, 169 (4th Cir. 2015). Second, Bristol alleged

---

[1] Bristol also sought declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 *et seq.* The majority rightly notes that the Declaratory Judgment Act does not "create[] any substantive rights" or provide a standalone cause of action. *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55–56 (4th Cir. 2011) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950)); *see also Skelly Oil*, 339 U.S. at 671 (explaining that the Declaratory Judgment Act "is procedural only" and "did not extend [federal courts'] jurisdiction" (internal quotation marks omitted)). Accordingly, Bristol's claim under the Declaratory Judgment Act only entitles Bristol to a particular type of relief in the event that either or both of its *substantive* causes of action succeed on the merits. "Stated differently, '[a] request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred.'" *CGM, LLC*, 664 F.3d at 55–56 (alteration in original) (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997)).

17

that the Accrediting Council was negligent per se in denying Bristol's application for renewed accreditation, in violation of certain provisions of the Higher Education Act, 20 U.S.C. § 1099b, and its implementing regulations. The district court granted the preliminary injunction and stay based on Bristol's federal common law claim.

After the Accrediting Council filed its appeal of the district court's order, the Department of Education terminated its recognition of the Accrediting Council as a national accrediting agency. Although the Accrediting Council appealed the Department of Education's decision, the Department of Education denied that appeal. The Accrediting Council is challenging the Department of Education's decision in court, *Accrediting Council for Indep. Colls. & Sch. v. U.S. Dep't of Educ.*, No. 1:16-cv-02448-RBW (D.D.C.), but, as it stands, the Accrediting Council is not a recognized accrediting agency for purposes of the Higher Education Act. The Accrediting Council's loss of federal recognition calls into question the justiciability of Bristol's claims.

II.

"Mootness has been described as the doctrine of standing set in a time frame." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (internal quotation marks omitted). Accordingly, a case can become moot due either to a change in facts or a change in law that undercuts a plaintiff's basis for asserting standing. *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' . . .; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a

18

favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Due to the Accrediting Council's loss of federal recognition, neither of Bristol's two causes of action provide a basis to redress Bristol's alleged injury. As a result, Bristol lacks standing to continue pursuing its claims against the Accrediting Council, and the present action is thus moot.

The district court awarded Bristol preliminary injunctive relief based on the Accrediting Council's alleged violation of the federal "common law duty on the part of quasi-public private . . . accreditation associations to employ fair procedures when making decisions affecting their members." *Prof'l Massage*, 781 F.3d at 169 (internal quotation marks omitted). This Court first recognized such a duty in *Professional Massage Training Center, Inc. v. Accreditation Alliance of Career Schools & Colleges*, 781 F.3d 161 (4th Cir. 2015). This common law "duty was meant to operate as a 'check on organizations that exercise significant authority in areas of public concern such as accreditation and professional licensing.'" *Id.* at 170 (quoting *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 712 (6th Cir. 2006)). In recognizing the common law duty, we emphasized that, though they serve important public functions, "[a]ccreditation agencies are private entities, not state actors, and as such are not subject to the strictures of *constitutional* due process requirements." *Id.* at 169 (emphasis added).

Nonetheless, we identified several reasons for imposing a common law due process-like duty on federally recognized accrediting agencies. *Id.* at 170. First, in the Higher Education Act, Congress "delegated to accreditation agencies a decisionmaking power that affects student access to federal education funding." *Id.* In particular,

accreditation by a recognized accrediting agency is *required* for institutions of higher education to access federal student aid funding. *See* 20 U.S.C. § 1002(a), (b)(1)(D) (defining an "institution of higher education" as, in part, an institution "accredited by a nationally recognized accrediting agency or association"); *id.* § 1070a(a)(1) (requiring students who receive federal Pell grants to be "in attendance at an institution of higher education"); *id.* § 1087aa(b) (allowing "an institution of higher education" to make federal Perkins loans to eligible students); *see also Prof'l Massage*, 781 F.3d at 170 ("Accreditation . . . is a prerequisite to Title IV funding and it provides assurance that the federal loans and grants are awarded to students who will get the education for which they are paying."). As a result, "accreditation agencies . . . serve an important quasi-public role in the dispersal of federal student aid funding." *Prof'l Massage*, 781 F.3d at 171. Namely, the Department of Education "rel[ies] on a number of select nationally recognized accrediting agencies that the Secretary of Education deems to be 'reliable authorit[ies] regarding the quality of the education or training provided by' schools" to ensure that the institutions that receive federal student aid funding are educating their students appropriately. *Id.* (second alteration in original).

A second "underpinning" of our recognition of this federal common law duty is "the fact that Congress has given exclusive jurisdiction to United States district courts over" certain disputes between institutions of higher education and nationally recognized accrediting agencies. *Id.* at 170. In particular, the Higher Education Act provides that "any civil action brought by an institution of higher education seeking accreditation from, or accredited by, an accrediting agency or association recognized by the Secretary . . .

and involving the denial, withdrawal, or termination of accreditation of the institution of higher education, shall be brought in the appropriate United States district court." 20 U.S.C. § 1099b(f). Congress's decision to vest exclusive jurisdiction in federal courts over this class of disputes "necessarily implies the application of federal law" and supports the imposition of a federal common law due process-like duty on recognized accrediting agencies. *Prof'l Massage*, 781 F.3d at 170 (internal quotation marks omitted) (quoting *Chi. Sch. of Automatic Transmissions, Inc. v. Accreditation All. of Career Sch. & Colls.*, 44 F.3d 447, 449 (7th Cir. 1994)).

In sum, the common law duty under which Bristol sought and obtained relief has as its foundation the unique role occupied by recognized accrediting agencies by virtue of their status as government-approved authorities on the quality of educational institutions and gatekeepers for federal education funding. *Id.* at 169–70. And Congress's desire for federal law to govern alleged violations of this duty is further confirmed by language in the Higher Education Act providing that such agencies will be subject to federal jurisdiction in civil actions brought by institutions that have or seek those agencies' accreditation. *Id.* at 170.

In this case, however, the Department of Education's decision to terminate its recognition of the Accrediting Council as a national accrediting agency removed the essential legal predicates underlying Bristol's federal claims against the Accrediting Council. *See id.* In particular, the Accrediting Council no longer has the power, delegated by Congress through the Higher Education Act, to make decisions "affect[ing] student access to federal education funding," eliminating the first "underpinning" of the

21

common law duty. *Id.* Only accreditation by a "*nationally recognized* accrediting agency or association" renders an entity an "institution of higher education," 20 U.S.C. § 1002(a), (b)(1)(D) (emphasis added), eligible to receive federal student aid funding, *id.* §§ 1070a(a)(1), 1087aa(b). Because the Accrediting Council is no longer a "nationally recognized accrediting agency," it no longer "serve[s] an important quasi-public role in the dispersal of federal student aid funding" or "wield[s] . . . life and death power" over Bristol based on its status as a gatekeeper to that funding. *See Prof'l Massage*, 781 F.3d at 170–71.

Nor can the second "underpinning"—Congress's grant of exclusive federal jurisdiction—provide a basis for our recognition of the federal common law cause of action pleaded in this case. Federal district courts have exclusive jurisdiction over "any civil action brought by an institution of higher education seeking accreditation from, or accredited by, *an accrediting agency or association recognized by the Secretary*." 20 U.S.C. § 1099b(f) (emphasis added). This exclusive jurisdiction does not, by the express terms of the statute, extend to civil actions brought by institutions of higher education that are accredited by or seeking accreditation from agencies—like the Accrediting Council—that are *not* recognized by the Secretary of Education.

Additionally, in *Professional Massage*, we framed the common law duty as applying to "quasi-public private . . . accreditation associations." *Prof'l Massage*, 781 F.3d at 169 (internal quotation marks omitted). Without the Department of Education's recognition, the Accrediting Council is no longer a "quasi-public" accreditation association. It no longer qualifies as a "reliable authority regarding the quality of the

education or training provided by" colleges and schools, 34 C.F.R. § 602.16(a), and it no longer controls access to federal education funding. Indeed, due to the absence of any connection to the federal government or its activities, there is no reason to subject the Accrediting Council to the strictures of the due process-like requirements that "quasi-public" federally recognized accrediting agencies must follow and that serve as the basis for Bristol's requested relief.

Finally, the purpose behind this Court's recognition of the federal common law duty at issue would not be served by recognizing the cause of action pleaded in this case. "The duty was meant to operate as a check on organizations that exercise *significant authority* in areas of public concern such as accreditation and professional licensing." *Prof'l Massage*, 781 F.3d at 170 (emphasis added) (internal quotation marks omitted). Without the Department of Education's recognition, the Accrediting Council cannot exercise *any* authority over an institution of higher education's access to federal funds, nor can it exercise the federal government's delegated authority in a way that "gives the public some assurance that" the schools and programs the Accrediting Council accredits are providing satisfactory education and training. *Id.* at 171.

Bristol's negligence per se action—which the district court did not rely upon in imposing the preliminary injunction—likewise only relates to federally recognized accrediting agencies. In particular, Bristol alleged that the Accrediting Council engaged in negligence per se because it did not comply with certain procedural requirements set forth in Section 1099b, and its implementing regulations, in deciding not to renew Bristol's accreditation. But those statutory requirements apply *only* to federally

23

recognized accrediting agencies.  Accordingly, because the Accrediting Council is no longer federally accredited, Section 1099b and its implementing regulations no longer govern the Accrediting Council's conduct.

In sum, the Department of Education's decision to terminate its recognition of the Accrediting Council as a nationally recognized accrediting agency eliminated any basis for relying on federal law to afford Bristol relief.  Since Bristol's complaint seeks relief *only* under federal law, there is no longer any basis to redress Bristol's alleged injury.  As a result, I would dismiss this case as moot.

### III.

Because Bristol's action is moot, I join the majority in vacating the preliminary injunction and stay entered below.  I would therefore remand this matter to the district court with instructions to dismiss this suit without prejudice.[2]  *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950) ("The established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss.").

---

[2] I offer no view regarding whether Bristol may base a claim for relief on another cause of action, such as a breach of contract claim under state law, or whether Bristol may refile its federal common law claim in the event that the Department of Education reinstates the Accrediting Council's recognition.  I simply note that there is no cause of action currently before this Court that affords a basis for redressing Bristol's alleged harm.